

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN



GERALD C. MANN
ATTORNEY GENERAL

Honorable Geo. H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

O-2172
Re: (1) Is the Bell Oil & Gas
Company, holding a dis-
tributor's permit, under
Article 7065a, V.A.C.S.,
to use, sell or distribute
motor fuel in Texas, auth-
orized thereunder to collect
and remit to the State of
Texas the motor fuel tax on
motor fuel sold at points
in Oklahoma, and related
questions.

Your letter of April 5, 1940, submits for the opinion of
this Department the following four questions which we quote
therefrom, together with the history and background of the con-
troversy leading to your inquiries, and the pertinent portions
of the Motor Fuel Tax Law:

"For the guidance of this department in the ad-
ministration and enforcement of the Motor Fuel Tax
Laws found in Article 7065a, with particular reference
to the operation of a motor fuel distributor in the
following fact situation, I desire your interpretation
of this law:

"The Bell Oil and Gas Company, a Delaware Corpora-
tion, with main offices at Tulsa, Oklahoma, has a bulk
storage plant at a terminal of a pipe line leading from
a refinery in Grandfield, Oklahoma, to a point in
Wichita County, Texas, from which the Bell Oil and Gas
Company makes sale of motor fuel. The company holds a
motor fuel distributor's permit as defined in the motor

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Hon. Geo. H. Sheppard, page 2

fuel tax laws of the State of Texas, secured by bond in the amount of $25,000.00, as required by law. There is no criticism to this practice of the company in making sales of motor fuel.

"This company also makes sales of motor fuel at Grandfield, Oklahoma, upon which the Texas tax of 4¢ per gallon is collected. The company makes monthly reports of a certain number of these sales made at Grandfield, Oklahoma, to the Comptroller's Office and pays the tax thereon according to such reports filed. These reports show that the motor fuel purchased at Grandfield, Oklahoma, was to persons who transport the same to points in Texas for sale, distribution or use. The purchasers of the motor fuel bought at Grandfield, Oklahoma, do not qualify as a distributor of motor fuel under the Texas law and do not pay the tax as such.

"Bell Oil and Gas Company also makes sales from a refinery near Ardmore, Oklahoma, under the same conditions and circumstances as they make from Grandfield, Oklahoma.

"History of case leading to this inquiry: During the year 1934 this department experienced much difficulty in the matter of tax evasions through imports from Oklahoma in the vicinity of Wichita Falls, Childress, and other points along the border, due to the privileges granted by Oklahoma--a simple declaration of intention to export permitted distributors or refiners to make sales in that State tax free. This attracted business in Texas to Grandfield, Oklahoma, fourteen miles from the State line, where the Bell Oil and Gas Company operated a refinery. Our supervisors were busy attempting to collect tax on imports as a result of this, and several dealers who were in the habit of buying motor fuel from the Bell Oil and Gas Company in their own trucks for transportation to Texas, for resale, adopted a plan of paying the Texas tax to the Bell Oil and Gas Company rather than qualify as a distributor in Texas. The Bell Oil and Gas Company remitted such funds so received to Texas. This department objected to the Bell Oil and Gas Company accepted the tax in this manner and proposed that they qualify as a distributor in this State by posting a bond. This proposal was received with favor and a permit was granted upon

Hon. Geo. H. Sheppard, page 3

the condition that the Bell Oil and Gas Company collect the Texas tax on all sales declared for Texas destinations.

"It is certain that this arrangement saved considerable tax for Texas, and worked with a fair degree of satisfaction. The Bell Oil and Gas Company subsequently constructed a pipe line from the refinery in Grandfield, Oklahoma, to a point across the State line in Texas, a distance of approximately ten miles from the line, where a bulk storage was erected to serve customers. This bulk plant is in operation but the company also continues to make sales from the refinery in Oklahoma as Texas sales.

In January, 1939, the Bell Oil and Gas Company arranged for the output of motor fuel through a subsidiary corporation-owned plant at Ardmore, Oklahoma, which is 41 miles interior from the Texas border, and the same plan of making sales in Texas was pursued from that point as from Grandfield, Oklahoma. In connection with these sales a manifest conforming to the Texas law is in use.

"It is conceded that the Bell Oil and Gas Company, a Delaware Corporation, having home offices in Tulsa, Oklahoma, and having authority on file with the Secretary of State in this State to do business in Texas, are holders of a motor fuel distributor's permit as defined in Section 2 (c) of the statute recited, secured by bond in the maximum amount required in the statute, and that this corporation is the owner of certain property in Wichita County, Texas; namely, repressure plant, bulk storage and pipe line terminal, and storage tanks.

"It is further conceded that the Bell Oil and Gas Company has remitted to the State of Texas, the tax of four cents per gallon on the amount of motor fuel reported as sold from these outlets; namely, Grandfield, Oklahoma, Ardmore, Oklahoma, and the terminal storage in Wichita County, Texas.

"It should be noted that the provisions of Section 15 (a), providing for penalty for certain violations, could not be applied to such violations committed outside of the State of Texas.

Hon. Geo. H. Sheppard, page 4

"It is also noted that the records required to be kept in this State are not available, and that the usual supervision given refineries by this department in the matter of checking sales frequently and checking truck loadings at docks of plants can not be complied with.

"A regulation of the Comptroller's Department, effective March 31, 1940, attempted to require the Bell Oil and Gas Company to consummate sales made under the provisions of the Motor Fuel Tax Law and the Texas permit to be made within this state. This regulation order is being resisted.

"It will be noted that motor vehicles are permitted, under Section 2 (b), to enter the State with motor fuel in fuel tanks connected with the carburetor in quantities of thirty gallons or less, free of the Texas tax, which privilege deprives the State of a large amount of tax and offers an opportunity for unfair discrimination against distributors operating wholly within this State, in the manner of sales.

"Attention is directed to the emphasis placed on the expression, 'in this State,' in the Motor Fuel State in connection with reference made to sales.

"Section 1 (c) defines a distributor as 'every person . . who makes a first sale of the same . . . as motor fuel in this State.'

"Section 2 (a) imposes a tax of four cents (4¢) per gallon 'which said tax shall accrue and be paid as hereinafter provided upon the first sale in Texas.'

"Section 2 (b) '. . . it being intended to impose the tax at its source in Texas, or as soon thereafter as such motor fuel may be subject to being taxed . . .'

"Section 2 (g) 'The tax herein imposed shall be posted separately from the price of the motor fuel, wherever sold in this State.'

"Apparently the statutory lien recited in Section 7 of the Motor Fuel Tax Law would be of no avail in event of default of tax payment by the Bell Oil and Gas Company because of the fact that the refineries are located outside the State of Texas.

Hon. Geo. H. Sheppard, page 5

"The person in Texas purchasing motor fuel from the Bell Oil and Gas Company's refineries in Oklahoma, accepting delivery at the refinery docks in Oklahoma, and receiving a manifest on form conforming to the Texas requirements covering the motor fuel purchased from the Bell Oil and Gas Company, with tax paid at the rate of four cents per gallon to the Bell Oil and Gas Company on the motor fuel delivered to such person at the refinery docks in Oklahoma, the tax being reported and paid by the Bell Oil and Gas Company to the State of Texas, has not qualified as a distributor and has not given bond or reported sales of motor fuel.

Questions:

"1. Is the Bell Oil and Gas Company authorized to collect the tax on motor fuel sold at Grandfield, Oklahoma, and report the sales and pay the tax to the Comptroller of Texas even though the Company holds motor fuel distributor's permit to operate in Texas?

"2. Is the person making purchases of motor fuel from Bell Oil and Gas Company at points in Oklahoma permitted to transport the motor fuel so purchased into Texas without qualifying as a motor fuel distributor and paying the tax direct to the State of Texas when such motor fuel has been sold, distributed, or used by such purchaser?

"3. Does the Comptroller have authority to issue a motor fuel distributor's permit to the Bell Oil and Gas Company when this department has knowledge that sales are made by such Company at a point, or points, outside the State of Texas?

"4. Does the Comptroller, under authority of Section 14 of the Motor Fuel Tax Act, have the power to issue regulations restricting sales coming under the purview of the Motor Fuel Tax Law to those sales consummated within the State of Texas?"

Our research has developed no decisions in this or other jurisdictions bearing either directly or by analogy upon the questions at issue here, and we are consequently relegated to a construction of the bare text of the pertinent portions of Article 7065a, Vernon's Annotated Civil Statutes, considered in connection with the factual background of this controversy, fully and fairly stated by you.

Hon. Geo. H. Sheppard, page 6

Subdivisions (a) and (b) of Section 2, Article 7065a, Vernon's Annotated Civil Statutes, hereinafter referred to as the Motor Fuel Tax Law of Texas, levies an excise tax of 4¢ on each gallon of motor fuel subject to a "first sale" in Texas, and causes the same to accrue as follows:

"(a) There is hereby imposed an occupation or excise tax of four (4) cents on each gallon of motor fuel or fractional part thereof. The said tax shall accrue and be paid as hereinafter provided upon the first sale in Texas.

"(b) The tax shall accrue on the first sale so that a single tax only will be collected on the same gallon of motor fuel, it being intended to impose the tax at its source in Texas, or as soon thereafter as such motor fuel may be subject to being taxed. No person, however, shall be required to pay a tax on motor fuel imported into this State in the tank of a motor vehicle, connected with and which feeds the carburetor or substitute therefor, in quantities of thirty (3) gallons or less when such motor fuel is actually used in said vehicle, and is not extracted from said tank for sale, distribution or use. . ."

Subdivision (d) of Section 2 of the Motor Fuel Tax Law provides for reports and remittances of taxes accruing under the foregoing tax levy, as follows:

"(d) Every distributor making first sale of motor fuel shall pay to the State of Texas an occupation or excise tax equal to four (4) cents per gallon or fractional part thereof, so sold, distributed or used, and such tax shall be due and payable at the office of the Comptroller at Austin, Texas, on the 20th day of each month, the same to be based on such sales or use made during the calendar month next preceding, and at the same time, such distributor shall make and deliver to the Comptroller a report properly sworn to and executed by such distributor or his representative in charge, on such forms as the Comptroller shall prescribe, which, among other things, shall give the number of gallons of motor fuel sold, distributed or used, intrastate and interstate, and exported during the preceding calendar month, and the number of gallons of motor fuel used, distributed or lost by fire or otherwise upon which no tax is paid. Provided also, that the

Hon. Geo. H. Sheppard, page 7

said report shall include the exact quantity of crude oil or petroleum products used or consumed during the period covered by the report in the manufacturing, refining or processing of motor fuel."

Section 3 of the Act requires "all distributors of motor fuel in this State now engaged, or who desires to become engaged in the sale or use of motor fuel upon which such tax is required to be paid" to procure a motor fuel distributor's permit from the Comptroller of Public Accounts, upon application therefor, accompanied by statutory surety bond in the amount and conditioned as required by Section 5 of the Act.

Section 4 of the Motor Fuel Tax Law provides that "upon receipt of the application and the bond hereinafter provided for, the Comptroller shall issue to every distributor a non-assignable consecutively numbered permit authorizing the first sale of motor fuel or its substitute in this State". (Underscoring ours)

The Bell Oil and Gas Company has duly complied with the permit and bond requirement of the Act, and no question is made here of its authority, under the permit issued to it by the Comptroller of Public Accounts, to make a "first sale" of motor fuel in Texas, as hereinafter defined, from its bulk plant in Wichita County, Texas, and make reports and remittances of taxes accruing on such sales. But your first question concerns itself with the authority of the Bell Oil and Gas Company, under said distributor's permit, to report and pay taxes accruing on sales admittedly made beyond the confines of the State of Texas.

The Legislature has defined the term "first sale," as used in the above quoted statutes, as follows:

"(d)   'First Sale' shall mean and include the first sale, distribution or use in this State of motor fuel refined, blended, imported into, or in any other manner produced in, acquired, possessed or brought into this State." (Underscoring ours)

The term "distributor" as used in the foregoing statute, is defined by subdivision (e) of Section 1 of the Motor Fuel Tax Law as follows:

"(e)   'Distributor' shall mean and include every person in this State who refines, manufactures, produces, blends or compounds motor fuel, or in any other manner acquires or possesses motor fuel and makes first

Ron. Geo. H. Sheppard, page 8

sale of the same in this State; and it shall also include every person in this State who ships, transports or imports any motor fuel into this State and makes the first sale of same in this State." [Underscoring ours.]

We have quoted hereinabove, in extenso, the controlling portions of the Motor Fuel Tax Law in order to better direct your attention to the continuous and consistent use of terms and phrases designed to give the Motor Fuel Tax Law, its operation and administration, a wholly intrastate effect and operation. The phrases "in this State," "in Texas," and other expressions of purely intraterritorial effect referring to "first sales" of motor fuel, and doing business as a "distributor" permeate the entire Act.

Even without such a clear legislative intent to conform the operation of the Motor Fuel Tax Law to the limits of this State, such would be the effect, by operation of law. As stated at 39 Tex. Jur. 59:

"Territorial Extent of Operation.--A statute can have no effect beyond the territorial jurisdiction of the legislative authority, except by comity. Thus it is settled that a statute authorizing the recovery of a penalty, at the suit of a private individual, has no extraterritorial effect and cannot be made the basis of a suit in another state. And in the absence of an express provision (or implication arising from the terms of a statute) to the contrary, it will be presumed that the Legislature did not intend that the act should operate beyond the territorial limits of its jurisdiction.

"A local act operates only within the particular part of the legislative jurisdiction to which it is applicable. And it has been observed that an act dealing with the sale of intoxicating liquor operates only in those portions of the State in which the sale of liquor is not prohibited by law."

Bearing in mind the statutory definition of "distributor" as one who, among other things, "imports any motor fuel into this State and makes the first sale of same in this State," and the statutory definition of "first sale" as meaning the "first sale, distribution or use in this State of motor fuel . . . imported into or in any other manner produced in, acquired, possessed or brought into this State," and further mindful of the

Hon. Geo. H. Sheppard, page 9

clear legislative purpose to accrue a motor fuel tax "upon the
first sale in Texas," "it being intended to impose the tax at
its source in Texas, or as soon thereafter as such motor fuel
may be subject to being taxed," can it be said that a sale and
delivery into the tank trucks of various dealers from Texas by
Bell Oil and Gas Company at Grandfield and Ardmore, Oklahoma,
constitutes said Bell Oil and Gas Company a "distributor" and
such sales "first sales," all as defined above. We think not.
It is the persons and dealers who purchase this motor fuel
from Bell Oil and Gas Company, import same into Texas in their
tank trucks, and make a "first sale" in Texas, as defined, who
are "distributors" rather than the Bell Oil and Gas Company.
Hence, such persons and purchasers are perforce the statutes
above quoted, required to obtain a distributor's permit and
fully comply with the statutory formalities for making "first
sales" of motor fuel in this State and reporting and remitting
taxes accruing thereon.

At the time of the delivery and sale of the motor fuel
at the two points mentioned in Oklahoma no tax has accrued and
yet the Bell Oil and Gas Company, acting purely as a volunteer
in the premises, anticipates the possible accrual of such tax
in Texas by collecting in Oklahoma and remitting into Texas
such contemplated tax accrual. This anticipatory and extra-
territorial action is not contemplated by anything which we can
find in the Motor Fuel Tax Law, and, if allowed to continue,
would result in the anomalous situation of a foreign corpora-
tion or concern acting as collector for the State of Texas with-
out said State having the benefit of a lien on its properties
in Oklahoma or a right to resort to statutory surety bond for
protection of its revenues. In this connection it behooves us
to say, however, that the record of Bell Oil and Gas Company
is absolutely unimpeachable regarding the report and remittances
of the State's revenues in the past and no criticism is here
intended for such company. But other cases might arise if this
practice is countenanced wherein the State would not be dealt
with as fairly as they have been by Bell Oil and Gas Company,
under this mode of operation.

The permit held by Bell Oil and Gas Company, under our
construction of the Motor Fuel Tax Law, covers and authorizes
only sales of motor fuel from the bulk plant in Wichita County,
Texas, and does not, under any conception of the statute govern-
ing its issuance and purpose, reach across the Red River to
cover and protect sales of motor fuel wholly consummated within
the State of Oklahoma. We therefore answer your first and
second questions in the negative.

Hon. Geo. H. Sheppard, page 10


          Answering your third question, we advise that you have
authority to issue to Bell Oil and Gas Company a motor fuel
distributor's permit, upon proper application therefor,
accompanied by surety bond conditioned and in the amount re-
quired by statute, despite the fact that it has been brought
to your knowledge that said company is selling motor fuel beyond
the limits of the State of Texas. It is of no concern to this
State that business is conducted in other states by a person,
firm, or corporation holding a motor fuel distributor's permit
under the Texas Motor Fuel Law, and such fact will not defeat
the right of Bell Oil and Gas Company to do business in Texas,
upon complying with the statutes governing such business. Of
course, this answer is limited and conditioned by our answer
to the two foregoing questions.

          Your fourth question turns upon your authority, as
Comptroller of Public Accounts, under Section 14 of the Motor
Fuel Tax Law, to issue regulations restricting sales coming
under the purview of the Motor Fuel Tax Law to those sales
consummated within the State of Texas. Said Section 14 provides:

          "The Comptroller shall have the power and it shall
     be his duty from time to time, to adopt, publish and
     enforce reasonable rules and regulations not incon-
     sistent herewith for the purpose of carrying out the pro-
     visions of this Act. Acts 1933, 43rd Leg., p. 75, ch. 44,
     § 14."

          If the above question is intended to inquire into your
authority, under the quoted rule-making power conferred upon
you, to promulgate and issue rules and regulations pursuant to
and in conformity with our holding herein in connection with
your first and second questions, then we advise that you un-
doubtedly have such power. A regulation refusing to longer
recognize the practice of Bell Oil and Gas Company, or other
distributors holding a permit in Texas, to collect, report and
remit to you taxes on sales of motor fuel at points beyond the
limits of Texas, and requiring persons and dealers making such
purchases and importing the motor fuel into Texas for a "first
sale," as defined, to qualify in all respects as "distributors,"
under the Motor Fuel Tax Law, would not be inconsistent with but
rather in strict conformity to the plain terms and requirements
of the Act.

Hon. Geo. E. Sheppard, page 11


      Trusting the foregoing fully answers your several
inquiries, we are

                                Yours very truly

                      ATTORNEY GENERAL OF TEXAS

                      By

                            Pat M. Neff, Jr.
                                Assistant

PMN:N


APPROVED APR 29, 1940

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS



APPROVED
OPINION
COMMITTEE
BY BWB
CHAIRMAN